Sweet, Respondent, vs. Underwriters Casualty Company and another, Appellants.

*December 8, 1931—January 12, 1932.*

448

For the appellants there was a brief by *Fiedler, Garrigan & Grimm* of Beloit, and oral argument by *E. C. Fiedler.*

For the respondent there was a brief by *Nolan, Dougherty, Grubb & Ryan* of Janesville, and oral argument by *W. H. Dougherty.*

NELSON, J.   The principal contentions of the appellants may be summarized as follows:

(1) No actionable negligence on the part of defendant Dole was shown.

(2) The plaintiff, at the time of the accident, was Mr. Dole's guest and therefore accepted the automobile as she found it.

(3) The issues in this action are governed by the rules laid down by this court in *Waters v. Markham,* 204 Wis. 332, 235 N. W. 797, and they were therefore not properly submitted to the jury.

(4) The damages found by the jury are excessive; and

(5) The jury was prejudiced by certain remarks of counsel for the plaintiff in their arguments to the jury.

We have carefully examined the evidence with the result that we conclude that the verdict of the jury as to defendant Dole's negligence is amply sustained by the evidence.   Under the proven circumstances we cannot well see how the jury would have been warranted in coming to any other conclusion.   From the time Dole left the mail box, proceeding westerly for a distance of about two hundred seventy feet, at a slow rate of speed, he experienced difficulty both in steering and in controlling his car.   He testified in substance: that as he started away from the mail box he had difficulty in steering his car; that he traveled quite a distance in the ditch trying to get the car back into the road; that he couldn't get it up into the road; that the difficulty continued right down to the time when he hit the culvert; that his car didn't go up into the road the way it generally

did; that he noticed the difficulty began right at the mail box; that this difficulty continued right up to the culvert; that he didn't succeed in getting his car to the center of the road prior to hitting the culvert although he was trying to do so all the time; that although his brakes were in good condition he didn't try to stop; that after he succeeded in getting his car onto the graveled portion of the road he still couldn't get it to the right of the road although he was trying to do so; that his speed was such that he could have stopped at any time between the mail box and the culvert within the length of his car.

Under the situation described by Dole we conclude that the jury was fully justified in finding that Dole was negligent in proceeding under such circumstances. Admittedly he could have stopped his car within a few feet after discovering that something was wrong with it which materially interfered with its steering and control.

While the plaintiff was Mr. Dole's guest and therefore accepted the car as she found it except as to defects known to Dole of which she was unaware (*Waters v. Markham, supra*), there is nothing in the evidence tending to show that the car was defective at the time she entered it. Certainly there is no evidence tending to show that Dole knew or ought to have known that his car was defective at the time the plaintiff entered it. He apparently had no difficulty in driving it from his home to the plaintiff's home or from the plaintiff's home to the mail box. The jury, under all of the proven circumstances, had a right to infer that the spring broke at or about the time the car was turned toward the mail box. Something happened at about that time which thereafter interfered with the control of the car. Had Dole not experienced difficulty in steering the car from the mail box to within a few feet of the culvert, during all of which time he was proceeding at a very slow rate of speed, a finding of actionable negligence on his part would be difficult, if

not impossible, to sustain. Had the car suddenly sustained a broken spring at a point close to the culvert causing it to swerve abruptly, we would have before us an entirely different situation, which would be ruled by *Waters v. Markham, supra.* As has been held so many times, it was the duty of defendant Dole to exercise ordinary care not to increase the danger to his guests or to create a new danger. It is quite clear from the evidence in this case that the jury might properly conclude that Dole failed to exercise that care which he owed to his guests.

We cannot say, under all of the circumstances, that the damages found by the jury are excessive. As a result of the accident the plaintiff sustained a broken nose, a fractured rib, and other bruises and contusions. She suffered considerable pain as a result of her injuries. Ever since the accident she has been confined to her bed, and it appears reasonably certain that she will never again be able to be up and around. While the plaintiff, at the time of the accident, was eighty-five years of age, and had a well-defined cataract, hardening of the arteries, an enlarged heart with valvular leakage, a pronounced tremor, and chronic Bright's disease, still there was ample testimony which tended to show that prior to the accident she worked regularly in her large garden and, in co-operation with her daughter Ida, produced some substantial income from the sale of garden stuff, canned fruit, and vegetables. There is also testimony which would warrant the conclusion that for one of her advanced age she was unusually active. According to all of the medical testimony, her injuries and the shock which she sustained tended to aggravate all of her old-age infirmities. It appears with reasonable certainty that she will have to have nursing care and attention for the remainder of her life. Her prospect of life, at the time of the accident, according to the American Experience Tables was 2.77 years. From the testimony the jury might properly have concluded that her ac-

tual expectancy was considerably greater. While the damages may seem rather high as compensation for a broken nose, fractured rib, and shock, and while such damages would be held to be excessive in the case of a younger person, who is able to make a complete recovery, we do not consider the damages so high in this particular case as to warrant their reduction or the granting of a new trial because of the amount thereof.

The appellants complain of certain remarks of plaintiff's counsel, made during their arguments to the jury.

One of plaintiff's counsel stated that "the sole defense is a reluctance on the part of the insurance company to pay" and that "the company took Mr. Dole's premium." On objection being made to these remarks plaintiff's counsel stated: "I want to add to that the purpose of the policy was to protect him (Dole) from accidents." The latter remark was also objected to. The court thereupon sustained the objections and vigorously instructed the jury to disregard the objectionable remarks. These remarks were improper, even though the insurance company was a party to the action, because they tended to misrepresent the nature of the liability of the insurance company under its policy. Another of plaintiff's counsel, in his closing argument to the jury, stated:

"What man or woman on the jury, if you were told that you had ten years to live; that your life would be cut off at five years, but you would be compensated for it, would take it." "You know, ladies and gentlemen of the jury, that she (Mrs. Sweet) is on her knees, with her arms stretched out to you asking you to properly compensate her for her loss of health." "I do not want any of the members of this jury to have any pangs of conscience, or ask themselves whether I have properly compensated this old lady for the injuries she received." "There is no compensation for pain and suffering. You cannot measure it by the bushel or the pound, and the capacity for pain, the capacity for pain and suffer-

ing, is just the same in a woman of eighty-five as it is for a woman of twenty-five."

While the statement, "there is no compensation for pain and suffering," etc., is not correct from a legal viewpoint (*Lehner v. Chicago, M., St. P. & P. R. Co.* 204 Wis. 558, 236 N. W. 572), and while the other remarks border on the improper as being an appeal to the passions and emotions of the members of the jury rather than to their reason, we cannot say, in view of the general instructions of the court to the jury and the verdict which resulted, that defendants were prejudiced by such remarks. It is not easy to determine whether improper remarks are prejudicial. This court recently took the position that, in order that remarks of counsel shall work a reversal, it should reasonably and affirmatively appear that such remarks operated to prejudice a party by inducing the determination of the issues by the jury, or by producing an excessive verdict. The findings of the jury herein seem to be so amply supported by the evidence that there is little, if any, ground for believing that the verdict would have been otherwise but for the improper remarks. *Lehner v. Chicago, M., St. P. & P. R. Co., supra.* We have examined the several other assignments of error with the result that we deem them without sufficient merit to require separate consideration.

*By the Court.*—Judgment affirmed.