KULL, by guardian *ad litem,* and others, Respondents, vs. ADVANCE-RUMELY THRESHER COMPANY, INC., and another, imp., Appellants.

*November 9—December 6, 1932.*

566

For the appellants there were briefs by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Oscar T. Toebaas.*

For the respondents there was a brief by *Sturgis P. Taggart* of Lake Geneva and *R. M. Rieser* of Madison, attorneys, and *Olin & Butler* of Madison of counsel, and oral argument by *Mr. Rieser* and *Mr. Taggart.*

Rosenberry, C. J. Many errors are assigned in the briefs for the defendants. To take them up seriatim and to consider and dispose of them all would extend this opinion to an unwarrantable length. We shall therefore deal only with the controlling questions presented upon this appeal.

It is seriously argued by the appealing defendants that Ann Kull was guilty of contributory negligence as a matter of law because she continued to drive upon her right side of the highway at a time when she was aware that the defendant Small was driving his car directly in the path which she must pursue if she continued. No doubt drivers of motor vehicles upon the highways are bound at all times and under all circumstances to use ordinary care for the protection of

themselves and third persons who may be upon the highway. When a driver of an automobile is upon that part of the highway where the law says he shall be when traveling, what constitutes ordinary care when he is confronted with an approaching car traveling upon that side of the highway where the law says it shall not be, is oftentimes a difficult and perplexing question and one which a careful driver must determine at his peril.

A situation quite similar to the one presented in this case is found in *John v. Pierce,* 172 Wis. 44, 178 N. W. 297, and it was there held that a driver has a right to assume that every person whom he meets will exercise ordinary care to avoid injury and has a right to expect that a person upon the wrong side of the road will turn to the right until the circumstances are such that an ordinarily prudent person would know otherwise. Many persons, for reasons which are unexplicable, unless it be natural human perversity, drive upon the wrong side of the highway. Most of them turn to their proper side of the highway before meeting oncoming vehicles. The driver of the Small car to all appearances was alive and awake and Ann Kull had every reason to expect that he would turn in compliance with the custom of drivers as well as in compliance with the statute. She slowed her car somewhat, she did not drive into the ditch, she finally concluded that something was wrong and in order to avoid a collision she would have to turn to the left. Whether or not in making that determination and in the control and management of her car she was guilty of want of ordinary care was clearly a question for the jury.

The claim that Ethel Chase was guilty of contributory negligence as a matter of law was based upon the argument that she should have done something that she did not do. What it was we are unable to surmise. She was not in control and management of the car and the driver of the car was at all times fully aware of the situation. For Miss

Chase to have assumed to direct the movements of the car would have been presumptuous and probably more harmful than helpful. The attention of the driver was directed to the position of the Small car a considerable time before the happening of the accident.

Question 1 of the special verdict in part was as follows: Was there any negligence on the part of the defendant Small at or about the time and place of accident (B) as to his driving position on the highway? In instructing the jury with reference to this question the court said:

"B of this question asks you to determine whether defendant Small was negligent in driving on the wrong side of the highway at the time and place indicated.

"It is the law that upon all highways of sufficient width the operator of a vehicle shall operate the same upon the right half of the highway—subject to certain limitations not here applicable.

"It is further the law that operators of vehicles proceeding in opposite directions shall pass each other to the right, each giving the other at least one-half of the main traveled portion of the roadway as nearly as possible.

"The burden of proof is upon the plaintiffs to convince you by the preponderance of the evidence that B of this question, as to operating on the left side of the highway, should be answered 'Yes.' Answer it 'Yes' or 'No' as you find the fact to be."

It is urged that the instruction is erroneous because the court used the words "wrong side of the highway." While the instruction is perhaps not as accurate and explicit as it might be, taken in connection with the question there could be no doubt in the mind of the jury that they were to answer the question 'No' unless they found that Small was operating on his left or the wrong side of the highway. Under the definition of negligence given by the court to the jury, Small could not be negligent unless he did drive upon the wrong or left side of the highway. If the court had said:

"If you find he was not upon the left side of the highway but upon the right side, answer it 'No,' " the instruction would be subject to little criticism. The court instructed the jury fully as to ordinary care and negligence and the jury could not have been misled by the fact that the court inadvertently framed the first sentence as it did. The first sentence is really nothing but a restatement of the question.

A witness, Wiley, while examining defendant's car discovered a whisky bottle in the right-hand pocket of the car. It was about half full of liquor. The witness took the bottle, subsequently turned it over to a friend of his at Kilbourn, who in turn gave it to a friend of his residing in the country. Subsequently an investigator for defendant called for the bottle and the bottle remained in the vault of defendant's attorneys until the time of the trial when the defendants were required to produce it. Upon cross-examination Small was asked whether he had liquor in his car, to which he answered "No." Apparently Small spent the previous night with a subagent of his, McTier, at Endeavor. McTier testified that Small had asked him about the whisky a month after the collision. On the trial McTier claimed that he had taken the bottle from his overalls inside jacket pocket and put it in the side-door pocket of Small's car to keep Small from finding out that he had a bottle. McTier claimed to have obtained the bottle on the day of the accident in payment of a bet, and that he and his friends had taken three drinks which had used up half of the bottle before he put the bottle in the pocket of the car. After leaving McTier's home no witness saw Small until he was seen coming around the curve 500 feet from the place of the accident. At that time he was nodding and was slumped over his wheel and continued in that position until he passed out of view of the witness Brady. It appears also that he was slumped over the wheel at the time Ann Kull saw him.

It is claimed that the admission of evidence with respect to the finding of this bottle of liquor was error. *Prima facie* at least Small was engaged in an illegal act, to wit, the transportation of intoxicating liquor; it was in his car and so in his possession. Under all of the circumstances as already set out, it was certainly not error to admit proof with respect to the presence of this bottle of whisky in Small's car. It is not necessary for a man to be intoxicated in order to have his ability as a driver affected and the plaintiffs were entitled to have the situation as it existed at the time of the accident presented to the jury as bearing upon the whole situation. The fact that the plaintiffs were not able to establish intoxication does not make the admission of evidence pertinent to that issue error.

It is next contended that the damages found are excessive. As already stated, Ann Kull was a young woman about eighteen years of age. She lost four upper front teeth in the accident, while four lower front teeth were loosened, one of which was finally extracted, her mouth was torn, there were numerous bruises upon her body, there was an incomplete fracture of the styloid process of the radius, a particle was chipped off the wrist bone, she sustained an injury to her knee which resulted in water on the knee, a thing which it takes a long time to cure and was not cured at the time of the trial two years after the accident. She suffered a severe infection of the mouth due to the loosening of the teeth. She suffered great pain following the accident and was compelled to submit to long-continued painful treatment. She was also somewhat disfigured by the injury to her mouth. The teeth which she lost must be replaced by a fixed bridge or by a removable bridge, either of which methods tends to deteriorate the teeth. While the damages assessed are high and no doubt approach the maximum, it is considered that they are not excessive. The

trial court saw the witness, observed the impairment due to the injury to her knee and to her face, and we are not disposed to disturb the judgment.

It is also considered that the damages awarded the other defendants are not excessive.

*By the Court.*—Judgment affirmed.