In re 333 NORTH MICHIGAN AVE. BLDG. CORPORATION, and three other cases.
Nos. 5792, 5794 and 5825, 5795 and 5826.

Circuit Court of Appeals, Seventh Circuit.

July 1, 1936.

Rehearing Denied July 24, 1936.

Morris A. Gold, Charles Liebman, and Maurice R. Kraines, all of Chicago, Ill., for appellants Sherman and others.

John Elliott Byrne and Benjamin Levering, both of Chicago, Ill., for appellant Lottie G. Brenner.

B. I. Salinger, Jr., and L. H. Salinger, both of Chicago, Ill., for appellant Max Rothfeld.

James W. Hyde, Andrew J. Dallstream, Leo S. Samuels, John S. Miller, Morris Schaeffer, Thomas V. Sullivan, Samuel A. Ettelson, Leonard B. Ettelson, Erwin M. Treusch, Ralph R. Hawxhurst, Homer C. Dawson, Julius J. Hoffman, Roger Q. White, and Bernard Hoban, all of Chicago, Ill., for appellees.

Before EVANS and SPARKS, Circuit Judges, and BALTZELL, District Judge.

SPARKS, Circuit Judge.

The order from which these appeals are prosecuted was entered in a proceeding for the reorganization of 333 North Michigan Avenue Building Corporation, under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207). Among other things, the order of the District Court approved and confirmed a plan of reorganization of the debtor and its subsidiary, the Allegheny Building Corporation, and provided for the carrying out of its provisions. It enjoined and restrained, until the consummation of the plan, all creditors and stockholders of the debtor and its subsidiary, and all other persons from instituting or further prosecuting any pending or subsequent suit against either of them or their property, or the permanent trustee, which would in any manner interfere with the property or its possession by the trustee.

The record discloses the following pertinent facts: The debtor is an Illinois corporation with an authorized no par value capital stock consisting of 30,000 shares of preferred stock, of which 19,272 shares are issued and outstanding and 60,000 shares of common stock, which are issued and outstanding. The capital structure has remained the same since the filing of the petition for reorganization.

In 1927, the debtor issued $6,250,000 of its six per cent serial bonds and secured them by a trust deed for the purpose of

constructing a thirty-two story fireproof office building and obtaining the title to its site, and all of the net· proceeds of the issue were expended for that purpose. The site cost $2,325,000, of which certain persons now stockholders contributed $1,500,-000 in cash. In 1928, a controversy arose as to the applicability of the funds to the payment of certain·costs of construction, and by agreement, certain funds were released by the depositary and applied thereto in consideration of certain stockholders guaranteeing the payment of the principal and interest of certain of the bonds. At the time of the default, hereafter referred to, there remained outstanding and unpaid, $89,500 of the guaranteed bonds and $5,-995,500 of the non-guaranteed bonds. When the plan of reorganization was being considered, uncertainty existed as to whether the guaranteed bonds were subordinated to those not guaranteed, and the plan subsequently approved by the court, provided that the stockholders of the debtor, through a syndicate, would cause all guaranteed bonds to be acquired and expressly subordinated to the other bonds.

The Allegheny Building Corporation is an Illinois corporation. Its stock, consisting of 19.3 shares of preferred and 60 shares of common, was owned by the debtor and is now held by the permanent trustee. In furtherance of a reorganization, the debtor, in May, 1933, conveyed to the subsidiary the building and the real estate herein involved, together with certain personalty consisting of supplies and similar equipment, in exchange for all of the subsidiary's capital stock. This transfer was made subject to, but without the assumption of, the debtor's outstanding indebtedness.

On January 1, 1932, the debtor defaulted in the payment of $51,500 of principal and the interest then due. On January 7, 1932, the trustee under the trust deed, with the consent of the debtor, entered into possession of the property, and remained in possession and management until the permanent trustee was appointed in this proceeding. On February 1, 1932, the trustee under the trust deed, by reason of the default, accelerated the maturity of all the outstanding bonds and filed suit in the state court for the foreclosure of the trust deed. Previous efforts had been made to effect a reorganization and they were continued and a plan was promulgated by and between representatives of the debtor and Greenebaum Sons Investment Company, the orig-

inal house of issue. This plan contemplated the exchange of the outstanding bonds for income bonds, and the Greenebaum Company was therein designated as reorganization manager. A deposit agreement was thereupon executed under which the outstanding bonds might be deposited by those holders desiring to do so. Progress was delayed on account of inability to obtain funds to finance the expenses, whereupon certain of the stockholders agreed to loan to the reorganization manager for that purpose a sum not to exceed three per cent of the amount of bonds deposited, upon condition that the amount so loaned should be secured by a lien against the deposited bonds, and should be paid by the reorganized enterprise. Obligations thus incurred by the reorganization manager to the extent of $119,000 remain unpaid, and they are secured by the pledge under that agreement of approximately eighty-eight per cent of the entire bond issue.

Upon the filing of the foreclosure proceeding, several intervening petitions were filed by bondholders, and other suits were filed in the state courts seeking the removal of the trustee and an injunction against carrying out the proposed plan of reorganization, based upon alleged fraud and mismanagement of the trustee, the reorganization manager, the corporation and others. Other suits were filed in the state court to dissolve the debtor and distribute its assets. These suits were afterwards consolidated and a receiver for the debtor and its assets was appointed, and was acting as such when the petition for reorganization was filed in the District Court.

The litigation in the state court continued without avail for about two years, whereupon a new plan, referred to as the "State Court Plan," was evolved after extended conferences of counsel representing all the parties, and it was accepted by all parties to the litigation except appellant Brenner.

The bill of foreclosure was amended and all holders of bonds secured by the trust deed were parties defendant, either in person or by class representation. In the fall of 1934, the State Court Plan was presented to the state court in the foreclosure suit, and by it referred to a master who, after extended hearings at which counsel for all parties attended, reported the plan fair and equitable. To this report appellant Brenner excepted, and after a hearing before the Chancellor the mas-

ter's report was approved, and a decree of foreclosure was entered on December 8, 1934. Under that decree, the trustee was directed, in the event there should be no bid at the foreclosure sale of $4,000,000 or more, to bid in the property for that amount, pursuant to the State Court Plan, which was incorporated in the decree. No party, except appellant Brenner, objected to the entry of the foreclosure decree. She appealed from it to the Appellate Court of Illinois, and that appeal is now pending.

The instant proceedings were instituted by an involuntary petition filed by three bondholders seeking a reorganization, on June 18, 1934, and the petition was approved as properly filed on December 24, 1934. In that order, it was provided that no trustee should be appointed until the further order of the court, and that the debtor should remain in possession subject to the rights of the indenture trustee under the foreclosure decree. Subsequently, on January 30, 1935, the City National Bank & Trust Company of Chicago was appointed permanent trustee and has continued to so act. On March 5, 1935, leave was granted Greenebaum Sons Investment Company, as reorganization manager, to become a party hereto by intervention.

After the approval of the petition by the District Court, the debtor, the subsidiary debtor, and the representatives of the holders of more than eighty-five per cent of the bonds concluded that the reorganization could be effected more expeditiously under section 77B of the Bankruptcy Act, and accordingly, the debtors filed in the bankruptcy proceedings a plan of reorganization identical with the State Court Plan except for minor changes necessary to comply with that proceeding.

Subsequently, the District Court referred the matters to a special master. Objections to the plan were filed by appellants, and after an extended hearing they were overruled. The master thereupon filed his report and recommendations, including special findings of facts and conclusions of law, in which he concluded that the plan was fair, equitable, was not unfairly discriminatory, and complied with the provisions of section 77B.

Appellants filed exceptions to the report, and at the hearing before the court suggested alternative plans. The exceptions were overruled, the master's report approved, and the plan confirmed, the latter having been accepted in writing and approved by the holders of eighty-eight per cent of the unguaranteed bonds, more than two-thirds of the guaranteed bonds, more than fifty per cent each of the common stock and the preferred stock of the debtor, and more than fifty per cent each of the preferred stock and the common stock of the subsidiary debtor. From this order of confirmation this appeal is prosecuted.

The plan as approved deals with the following funded obligations, and interest thereon: Non-guaranteed first mortgage bonds, $5,999,500; guaranteed first mortgage bonds, $89,500; preferred stock, stated value, $1,541,760; and common stock, stated value, $300,000. Under the plan, a new corporation has been formed, under the laws of Delaware, known as 333 Building Corporation, authorized to issue the following stocks:

(1) 59,995 shares, prior preferred without par value, bearing dividends at $5 per share per annum, cumulative to the extent earned until July 1, 1939, and fully cumulative thereafter, entitling the holders, upon redemption or liquidation, to $100 per share and unpaid cumulative dividends. These shares are to be delivered to the holders of the non-guaranteed first mortgage bonds on the basis of one share for each $100 of bonds.

(2) 895 shares of junior preferred stock of no par value, entitling the holders to five per cent dividends per annum, cumulative and payable as the prior preferred stock. These shares are to be delivered to the holders of the guaranteed first mortgage bonds on the basis of one share for each $100 of bonds.

(3) 118,616 shares of common stock of one dollar par value per share. Of these shares, 59,995 are to be distributed pro rata to the first mortgage bondholders; 895 shares are deliverable to the subordinated first mortgage bondholders; and 57,726 shares are deliverable to the preferred and common stockholders of the principal debtor.

No dividends can be paid on any other stock until those on the prior preference are fully paid, and twenty-five per cent of the net earnings are to be set aside for the retirement of the prior preferred stock, and that stock must be retired before any distribution of capital can be made on any other stock. All classes of stock are entitled to cumulative voting. Until the new corporation has paid dividends upon the prior preferred stock at the rate of $5 a

share per annum for two successive years, and if at any time thereafter it shall fail to maintain such standard, the holders of the prior preferred stock shall have three votes for each share on any matter, and the subordinated stockholders shall have one vote for each of their shares. Upon consummation of the plan, all assets of the debtor will be turned over to the new corporation without encumbrance.

The plan further provides that the stockholders of the debtor, through a syndicate, shall acquire all of the guaranteed bonds and cause them to be subordinated to the unguaranteed bonds, and shall accept repayment of them from the new corporation over a period of five years, with interest at four per cent per annum. The stockholders further agree to loan the new corporation such an amount as it may desire to borrow, not exceeding $21,000, for the purpose of discharging prior claims and administrative expenses.

It is first contended by appellants that their security and rights pertaining to the enforcement of their mortgage bonds have been substantially impaired by the plan of reorganization, and for that reason the plan and the statute under which it was promulgated are at variance with the "due process" clause of the Fifth Amendment to the Federal Constitution.

▆▆▆▆ Under section 77B, the rights of all claimants and creditors are entitled to the same protection, but they may be divided into classes, as was done in this proceeding. That law requires a two-thirds vote of each class before a plan can be confirmed, and that provision was complied with in the case before us. When a class consists of only one party, regardless of the nature of his claim, his consent must be obtained, provided his claim is affected by the plan. If, however, he is one of a class, and two-thirds of that class approve a plan which the court finds fair, equitable, feasible and not unfairly discriminatory in favor of any class, and all classes have so consented, the remaining members of that class or classes will be bound by the plan, although their rights may be changed. Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110; Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S. Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106; Cumberland Glass Manufacturing Co. v. De Witt, 237 U.S. 447, 35 S.Ct. 636, 59 L. Ed. 1042. We find no expression of the Supreme Court which is at variance with this interpretation, and appellants' contention that section 77B is unconstitutional is without merit.

▆▆▆ It is contended by appellant Brenner that the District Court had no jurisdiction to reorganize the debtors, or to take possession of their property which was then in possession of the indenture trustee and involved in a foreclosure proceeding in the state court. She raised this question for the first time in her assignments of error in connection with this appeal.

It is true that when this proceeding was instituted the indenture trustee, the City National Bank & Trust Company of Chicago, had been in possession of the property since 1932, and the foreclosure proceeding was pending. Subsequently, a decree of foreclosure was entered. After the petition for reorganization was approved, and after notice to all parties and without objection from any of them, the District Court appointed the indenture trustee as permanent trustee, and the property of the debtor was turned over by the former to the latter. Subsequently, upon granting the subsidiary debtor's petition for reorganization under this proceeding, the District Court entered an order, without objection from anyone, appointing as its permanent trustee the principal debtor's permanent trustee, who thereupon took over the subsidiary's property with the approval of the court, and without objection.

On May 9, 1935, appellant Brenner, as a creditor, filed her petition objecting to the plan which had theretofore been filed on March 29, 1935, and she then raised no question to the court's jurisdiction or right to take possession of the property involved, or to consider, approve and confirm a plan of reorganization. She participated in the hearings before the master, and filed exceptions to his report on the plan, and again failed to raise any question as to the court's right to proceed and carry out the plan. When the court heard the exceptions to the master's report she participated in the argument, urged certain changes, and suggested a new plan, yet she raised no question of jurisdiction until after the court's ruling, in her assignments of error to this court. There is no direct controversy in this appeal between the parties with respect to the right of possession of the debtor's property, and the cases upon which this appellant relies to support her contention are those in which the right

of possession was directly in issue. Typical of these cases is In re Frances E. Willard National Temperance Hospital (C.C.A.) 82 F.(2d) 804. However, in that case, it was the successor trustee in possession by virtue of the trust deed and state court foreclosure proceedings who questioned the right of a trustee appointed by the bankruptcy court to oust him. Here the indenture trustee was subsequently appointed permanent trustee in the reorganization proceedings, and it raises no question as to possession. Moreover, in the Willard Case this court recognized the right of the debtor to reorganize, irrespective of the right of possession pending the reorganization. There is no merit in this contention.

■ It is contended by appellant Rothfeld that the court erred in not permitting him to intervene and to be heard on the questions in issue. Subsection (c) of section 77B (11 U.S.C.A. § 207 (c), provides that any creditor shall have the right to be heard on the question of the permanent appointment of any trustee and on the proposed confirmation of any reorganization plan, and upon the filing of a petition for leave to intervene, on such other questions arising in the proceeding as the judge shall determine. The record discloses that his petition to intervene was denied, but he was given every opportunity to be heard on every pertinent question. He filed objections to the plan and participated in the hearings before the master, and we find no instance where the court or the master denied him the right to be heard on any matter upon which he requested to be heard. There was no error in the court's ruling in this respect.

■ Appellants also contend that the court erred in approving the plan because it provided that the new corporation was to be organized under the laws of Delaware, rather than Illinois. A reading of the pertinent corporate organization statutes of these states is quite persuasive of the fact that the court very properly concluded that the objects of the plan could be more advantageously carried out under the Delaware laws, and we can not disturb that conclusion.

■ It is further contended by appellants Sherman, et al., that the court erred in not requiring schedules to be filed, and in denying their petitions which asked leave to inspect the debtor's books, and for certain information pertaining to the debtors.

Subdivision (c) (4) of section 77B provides that the court shall require the trustee, if appointed, "at such time or times as the judge may direct, and in lieu of the schedules required by section 7 [section 25 of this title], to file such schedules and submit such other information as may be necessary to disclose the conduct of the debtor's affairs and fairness of any proposed plan." The record discloses that all pertinent evidence available or in the possession of any of the parties, and which was requested, was produced for inspection and was examined, and we think the court committed no error as to this.

■ Separate assignments of error have been made with respect to the validity of the deposit agreement approved by the District Court, the right of the reorganization manager to act thereunder, and the validity of his assents during the progress of the proceedings. These contentions are without merit. It is impracticable to set out the entire plan in this opinion or to discuss the many assignments separately. It is sufficient to say that the authority granted by the agreement was full and complete as to the legal, equitable and beneficial title to all the bonds deposited thereunder. The only limit upon the power of the reorganization manager with respect to carrying the plan into effect was that in the event of the adoption of any new, substitute or amended plan, it must give to the depositors due notice and the right of withdrawal or dissent. The deposit agreement complied with the Federal Securities Act 1933 (15 U.S.C.A. § 77a et seq.) and with the rules and regulations of the Securities and Exchange Commission, and it was approved by the District Court in a decree which fully protected the depositors with respect to the limitation above referred to. The record discloses that notice was given of all changes in the plan as adopted, and full right of withdrawal or dissent was extended in full compliance with the agreement and the decree, and we think this was sufficient to authorize the reorganization manager to act for all depositors who failed to withdraw or dissent, and such acts, all of which were approved by the decree and the Securities Exchange Commission, were valid.

■ Error is also assigned on the alleged abuse of discretion by the court in refusing to turn over a list of bondholders to the representatives of appellants Sherman et al. The disclosures of the record were suf-

942

ficient to warrant the court in believing that this request was made for the purpose of soliciting bondholders in order to prevent any reorganization not meeting the approval of those representatives. We can not say that the District Court abused its discretion in this respect, and we are convinced that the court's approval of the plan without turning over to appellants a list of the bondholders was not in any manner a violation of the due process clause of the federal constitution.

It is further urged by appellants that the court erred in not allowing claims filed by certain depositing bondholders. In response to the court's order, the following claims of that character were filed: (1) By the indenture trustee a claim for all unpaid bonds and interest coupons secured by the deed of trust, to be reduced, however, by the amount of all claims personally filed by bondholders; (2) by the reorganization manager a claim for all deposited bonds and interest coupons; (3) claims filed by some bondholders on undeposited bonds; and (4) claims filed by persons claiming to be holders of certificates of deposit for bonds in the respective amounts of the certificates.

The court allowed the claim of the indenture trustee reducing it by the amount of the claims filed by the reorganization manager and the individual bondholders who had not deposited their bonds. In other words, to prevent duplication, the court allowed the claim for deposited bonds and disallowed the claims on certificates of deposit. In this there was no error. It in no manner injured the certificate holders, for they were given the right to object to or dissent from the plan without withdrawing their bonds.

Appellants further contend that the plan was unfair because it provided for the assumption by the reorganized corporation of the obligations hereinbefore referred to in the amount of $119,000 incurred in connection with the assembling of the first mortgage bonds, and the efforts toward a reorganization which substantially culminated in the plan as finally adopted. In view of the magnitude of the property here involved, the diversity of interests, and the length of time which seems to have been necessarily consumed in effecting a plan, we can not say that the court erred in the amount allowed, or in considering it a proper item to be dealt with in effecting a reorganization. Our con-

clusion in this respect is further supported by the fact that at no time during the negotiations did anyone protest against the propriety of the obligation as one to be cared for in any plan that might be adopted. So far as the record discloses, the obligation was at least tacitly conceded to be one necessarily incurred as an expense incident to the reorganization. To treat it solely as an obligation of the depositing bondholders would seem to be quite inequitable. It is of the character of obligations contemplated under section 77B (c) (9), 11 U.S.C.A. § 207 (c) (9), and having been approved after full hearing by the master and the court, we do not feel justified, under the evidence, in interfering with their conclusions in this respect.

It is further contended by appellants that the court should have found as a fact that the debtors were either solvent or insolvent, and that without an appraisal for that purpose it was impossible for the court to pass on the fairness or equitableness of the plan. The law did not require the court to formally find that the debtors were solvent or insolvent. The record discloses that the debtors were unable to meet their maturing debts. That fact was never controverted, and it constituted the basis of the petitioners' right to a reorganization, upon the approval of a plan which was fair, equitable, feasible, and not unfairly discriminatory. In satisfying itself that the plan presented had those characteristics, the court was required to exercise an informed, independent judgment, based upon reliable information as to the character of the property involved, its cost and productivity, the character and amount of the debtor's indebtedness, and the existing economic conditions. The record is voluminous and it contains much evidence in support of the court's ruling in this respect. It also discloses that there was much more material evidence received by the District Court, bearing on the court's approval of the plan, which is not in the record, although it was called for in appellees' praecipe. Under these circumstances, we can not say that the court abused its discretion in not requiring an appraisal, and we are convinced that such action of the court was in no manner violative of the due process clause of the Federal Constitution.

Appellants further contend that the court abused its discretion, under section

77B (e) (1), 11 U.S.C.A. § 207 (e) (1), in determining that the statement of transfers of securities need not be filed. The reasons for such determination are set forth in the court's order, and the disclosures of the record support the court's conclusion in this respect.

It is urged by appellants that the plan is not feasible. That, of necessity, must depend upon the earning power of the property and future economic conditions. We have heretofore set forth the plan in quite general terms. To detail its many provisions would serve no good purpose and would merely prolong this opinion. What the property is, and what it has produced, is well known. What it will do in the future is, of course, problematical. Under existing conditions no one can say with assurance that the plan will succeed. The District Court thought that immediate liquidation would be disastrous to all interests, and that there was reasonable ground for believing that the plan would succeed. We concur in that view.

It is obvious that the reorganization was designed to, and does, give the present bondholders the complete control of the new company which will engage in business and begin its corporate existence with a management approved of and superintended by the District Court. We think the court was warranted in holding that the plan was fair, equitable, feasible and not unfairly discriminatory in favor of any class of creditors or stockholders. The law did not contemplate, nor does the plan provide, that control of the new organization should be turned over to the objecting minority bondholders. To do so would indeed be inequitable and discriminatory. They, however, are equally protected with all others, according to the character of their interests, so far as it is humanly possible to do so. By way of innuendo, much has been said by certain appellants derogatory to the organization and past management of the debtor. They have also expressed fears lest the present stockholders under the new plan will dominate the reorganization to their detriment. We think that fear is not well founded, because of the overwhelming control of the present bondholders over the affairs of the new corporation.

It is further contended by appellants that the court erred in enjoining all parties from interfering with the debtors and their property pending the consummation of the plan. Having concluded that the District Court properly approved the plan, we are convinced that the injunction was properly issued to preserve the status of the property under section 77B (c) (10), 11 U.S.C.A. § 207 (c) (10).

Other minor objections to the court's order were raised which we do not deem of sufficient merit to discuss. We find no error in the record.

Decree affirmed.