## In re WAERN BLDG. CORPORATION.
## MORRILL v. WAERN BLDG. CORPORATION.

### No. 8538.

Circuit Court of Appeals, Seventh Circuit.

Nov. 8, 1944.

Rehearing Denied Dec. 18, 1944.

Simon H. Alster, Kernel Freeman, Alster, Berger & Wald, and Freeman & Freeman, all of Chicago, Ill., for appellant.

Walter E. Wiles and Evart O. Ostberg, both of Chicago, Ill. (Herman Barrington, of Chicago, Ill., of counsel), for appellee.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

The debtor, Waern Building Corporation, filed a petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S. C.A. § 501 et seq. After hearings before the referee at which the proposed plan was modified by eliminating the common stockholders' and the Series B preferred stockholders' equity, so as to leave outstanding only the bonds and the new no par common stock, said stock to be distributed pro rata to holders of the Series A preferred stock, the court confirmed the plan. From this order of confirmation, an objecting bondholder, Ernest Morrill, appeals.

The plan involves an extension of the maturity date of the first mortgage from 1942 to 1948, interest of 4½% annually, deposit of $3,500 annually by the debtor for retirement of the bonds, and deposit of all net rentals with the Chicago City Bank and Trust Company, indenture trustee for the bondholders. More than the required number of creditors consented to the plan, as modified, and the referee and the court found it fair, equitable, and feasible, in accordance with Chapter X. Additional facts appear in the discussion of appellant's arguments against the plan.

Appellant first argues that the burden of proving that the plan was fair, equitable, and feasible was upon the debtor and that the burden was not sustained; that there was no necessity on his part of producing evidence showing that the plan does not meet these requirements.

We think the burden was sustained. The terms of the plan were considered by the referee and the court, and lengthy and full hearings were had as to the plan's feasibility; there was evidence of the debtor's earnings record, valuation, capital structure, nature and condition of the property, and other important facts. These were fully discussed and weighed, and since the court had before it sufficient evidence on which to base a determination, we are not disposed to upset the holding of the court on the mere allegation of unfairness. In re New Rochelle Coal & Lumber Co., 2 Cir., 77 F.2d 881, 883.

Appellant next argues that the plan violates the absolute priority rights of the bondholders because it does not provide for 7% interest. It is true that the bonds provide for an accelerated interest rate after maturity of 7% and that under the plan stockholders participate to the extent of their equity while the bondholders' interest rate is 4½%. The record shows that the appellant never objected to the plan on this ground at any time, either before the referee or the court. Appellant attempts to thrust this objection in as an afterthought on this appeal. If appellant wished to complain of this aspect of the plan, he should have raised a specific objection before the referee and the court in order to have permitted a finding as to its validity. Since he did not, the objection may not be raised for the first time in this court. In re Grosse, 7 Cir., 24 F.2d 305, 306; McGee v. Nee, 8 Cir., 113 F.2d 543, 546; Reconstruction Finance Corporation v. Sun Lumber Co., 4 Cir., 126 F.2d 731, 738; Century Furniture Co. v. Bernhard's, Inc., 9 Cir., 82 F.2d 706, 707; Maloney v. Brandt, 7 Cir., 123 F.2d 779, 782; Richter v. Hoglund, 7 Cir., 132 F.2d 748, 753; Towle v. Pullen, 7 Cir., 238 F. 107, 111, 151 C.C.A. 183; In re Massa, 2 Cir., 133 F.2d 191, 192.

My colleagues concur in the conclusion that appellant is precluded from raising this question for the first time on review. The author of this opinion, however, feels impelled to add this paragraph which represents his own personal opinion. I am convinced that even if the procedural barrier to considering appellant's argument that the absolute priority rights of the bondholders are violated by the plan were to be ignored, the argument is still without merit for the following reasons. Any "stockholder participation" here is more nominal than real, being restricted so far as any beneficial enjoyment goes to the distant future—long after the termination of this plan. All the net rentals must be deposited with the indenture trustee. The money so received must, under the terms

of the trust indenture, be applied to payment of taxes, insurance, interest, and payments into a fund to be used for the redemption of bonds. Thus the stockholders do not receive any dividends. Though the corporation has legal title to the property, all earnings must be used for the bondholders' benefit. No mismanagement on the part of the operator of the building is charged, and since the debtor's control is subject to the stringent conditions of the trust indenture, there is no participation by the stockholders in the debtor beyond the extent of their equity. There is no attempt here to subordinate the interests of creditors to that of stockholders. Furthermore, the provision in the bonds is for interest *after maturity* at the rate of 7%. The very soul and purpose of the present plan is to extend the maturity date. Bondholders owning over 82% in amount of the bonds consented to the confirmation of the plan, and only appellant, who owned less than 1%, took any affirmative steps to oppose it. The 4½% rate provided under the plan is merely the average rate which the bondholders received under the indenture for the period of the original extension under the plan in force since the 77B proceeding of 1936, and allows them the same return under the proposed extension that they received in the previous period. It seems to me that the bondholders have no legitimate complaint that the plan does not put them in a better position and allow them a greater return than they formerly had. I think it is the purpose of Chapter X to make possible such plans and to prevent a single recalcitrant party from blocking a plan deemed beneficial by more than two-thirds of creditors of the same class. Finally, the right of the bondholders to interest accrued on the bonds is given the same priority as the principal, and payments of such interest have been made on each due date. Hence Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 318 U.S. 523, 546, 63 S.Ct. 727, 87 L.Ed. 959, which appellant cites, is not material here, for it does not hold that a provision in the original bonds as to an accelerated rate of interest after maturity must be the interest rate which is to be included in the plan if stockholders participate. So much for my additional reasons for finding appellant's argument unsound.

■ Appellant's next contention is that the plan does not meet the test of feasibility because there is no reasonable assurance that either the interim requirements of the plan can be carried out or that the debtor will be able to pay or refund the balance of the bonded indebtedness at the end of the extension period. For the sake of convenience this will be considered along with appellant's contention that the court did not have before it competent and sufficient valuation data relating to the debtor's property and earning capacity. In valuing the property, there must be a meticulous regard for earning capacity. Consolidated Rock Products Co. v. Du Bois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982. Here the referee had the financial history as well as financial statements of the corporation which showed the following:

| Year | Rents | Operating Expenses |
|------|-------|--------------------|
| 1938 | $28,000 | $15,000 |
| 1939 | 28,100 | 14,800 |
| 1940 | 29,800 | 15,200 |
| 1941 | 31,300 | 15,850 |
| 1942 | 32,400 | 15,880 |
| 1943 | 33,000* | 16,000* |

The operating expenses above stated are all expenses exclusive of taxes, which run about $3,300 per year, interest, which is nearly $6,400, insurance, and the trustee's charge of 2% of the net rentals.

The referee also had the benefit of the testimony of three witnesses as to valuation. Although appellant's appraiser, one McKey, valued the property at only $139,550, he conceded on cross-examination that if a buyer were willing to take 7% instead of 8% or 9%, his valuation would be higher. Another appraiser, one Turnquist, said that the proper rate was 5% or 6%. McKey also admitted that he had not appraised any property in the neighborhood for two years. Turnquist valued the property at $150,000 and Haynie, appraiser for the indenture trustee, valued it at $155,000; both men were speaking of immediate cash value. Moreover, there was testimony that the life of the building was 100 years, and that depreciation was very small, less than 1% per annum.

The referee's findings, which were adopted by the court, were to the effect that the debtor was solvent; that its real estate had a present fair cash market val-

---

* Crude figure.

ue of at least $150,000 and an economic value, based on a fair capitalization of its prospective earnings, of at least $160,000; that the life of the building was at least 60 years; that the building was in an excellent neighborhood; that the building was well ·managed and kept in excellent physical condition; that in the six years under the former (Section 77B, 11 U.S. C.A. § 207) plan of reorganization, there was paid out of the income of the debtor's property back interest of about $4,-000, taxes of unstated amount, and bonds totaling $15,200; that the debtor had the cash sum of at least $11,231 available for payment of costs of administration, taxes and interest; and that in all probability between $30,000 and $36,000, not merely the $21,000 ·guaranteed by the sinking fund payments provided for in the plan, would be available during the six year period of the extension for amortization of the bonds. We accept these findings.

■■ Thus sufficient earnings and valuation data were before the court so that he could exercise his informed, independent judgment. Contrary to appellant's contention, the question of whether the court should order an independent formal appraisal of the property at the expense of the estate depends upon the facts of each proceeding and lies within the sound discretion of the court. Consolidated Rock Products Co. v. Du Bois, supra, 312 U.S. page 527, 61 S.Ct. 675, 85 L.Ed. 982; Jamieson v. Watters, 4 Cir., 91 F.2d 61, 63; In re Georgian Hotel Corporation, 7 ·Cir., 82 F.2d 917, 920. Because there was testimony bearing on, and careful consideration given to, the income and expenses (including interest and taxes), original and replacement cost, and other matters bearing on the value of· the debtor's property, the referee was justified by the record in determining the value of the debtor's real estate, and the court in confirming such valuation exercised his sound discretion.

■ The plan meets the requirements of feasibility under Chapter X. From the foregoing facts it is clear that the property's earnings will be more than adequate to meet the interest payments as they become due during the six year period of extension. Also, it seems a reasonably safe prediction that net earnings will be high enough to permit payment of $3,500 into the sinking fund. each year. No dividend payments are required. Hence the plan meets the primary test prescribed by appellant's authorities,[1] namely, may the earnings reasonably be expected to meet the interest and dividend requirements of the new securities.

■ Appellant's next objection to the plan on grounds of lack of feasibility is that the debtor has not shown how the bonds are to be paid on maturity, that is, on May 10, 1948. The referee sustained an objection to appellant's question as to how this was to be done. Depending upon the circumstances in effect at the time of the maturity of the bonds, there may be several means of retirement. The property may be sold or refinanced. Appellant argues that it will not be possible to refinance it, so that the plan is not feasible. But the word feasible does not connote absolute insurance of success but only reasonable assurance of success. Rauscher v. Northwest Cities Gas Co., D. C., 46 F.Supp. 49, 51. This success hinges upon the earning power of the property in the future which cannot now be ascertained with mathematical certitude. Since there is reasonable ground for concurring in the court's view that the plan will succeed, we shall not disturb his holding. In re 333 North Michigan Avenue Building Corporation, 7 Cir., 84 F.2d 936, 943. Here, the referee anticipated, after analyzing the earnings and expenses, past, present, and prospective, that $30,000 to $36,000 of bonds would be amortized while the plan is in force. Assuming ·a retirement of $33,000 by 1948, that would leave a bonded indebtedness of $108,800 against the property. In view of the long life and small depreciation of the property, it seems very unlikely that the property will have deteriorated by anywhere near $33,-000 during the six year period. Though the ratio of debt to value of the property will be high, it will not necessarily be so high as to make some new financial arrangement impossible or so improbable

that we may say as a matter of law that the plan is not feasible. True, as appellant points out, where a plan is not fair and equitable as a matter of·law, it can not be approved by the court even though the percentage of creditors required by the statute for confirmation of a plan has consented, and the fact that the great majority of creditors have approved the plan is not the test of whether it is fair and equitable. Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110. But where the plan is not unfair or inequitable and the sole question is one of feasibility, the collective judgment of the bondholders, the parties primarily concerned, should not be lightly thrust aside, In re A. C. Hotel Co., 7 Cir., 93 F.2d 841; In re Gibson Hotels, D.C., 24 F.Supp. 859, and it is a relevant consideration that the overwhelming percentage of bondholders have voted to accept this plan.

 Appellant argues that the value of the property will have shrunk due to depreciation and obsolescence and the debtor argues that the value will have increased due to inflationary factors and the removal of rent ceilings, at maturity. It would appear that the correct view is not now determinable. Where the feasibility of the plan hinges so much on speculation as to the future and on intangible factors, some leeway must be given to the informed judgment of the referee and the trial court, who saw and heard the witnesses and were in a position to evaluate their testimony. In the exercise of their sound judicial discretion they have declared the plan feasible, and we are not willing to set their ruling aside.

Appellant makes certain other arguments which are not sound. These we have considered. It would unduly prolong this opinion to discuss them in detail. Suffice it to say that the record does not disclose conflicting interests of the indenture trustee so as to warrant its removal. Mere ownership of a small percentage of the bonds in its individual capacity would not cause it to be faithless to its trust, and it has no interest in or obligation to any other group. Nor was it essential for the Securities and Exchange Commission to appear in these proceedings. This was a relatively simple proceeding; only one class of creditors filed claims. The court apprised itself, with complete understanding, of the matters involved, so there was no need to request the Commission to participate. Congress recognized that this might appropriately be left to the discretion of the court and specifically provided that the " * * * Commission shall, *if requested by the judge,* * * * " file its appearance in proceedings. Section 208 of Chapter X, 11 U.S.C.A. § 608. Section 172 of the Bankruptcy Act, 11 U.S.C.A. § 572, provides for the submission to the Commission of any plan in which the scheduled indebtedness exceeds $3,000,000, but here the debts were less than a twentieth of that sum. Though fully informed of these proceedings, the Commission never requested the right to enter its appearance. The public interest was not harmed by the fact that the Commission did not participate. We conclude that its participation was not necessary. Finally, on this record, it was not error for the court to refuse to order a sale of the debtor's property.

The judgment is affirmed.