## HORN v. ROSS ISLAND SAND & GRAVEL CO.
### No. 8246.

Circuit Court of Appeals, Ninth Circuit.
Feb. 16, 1937.

Coan & Rosenberg, of Portland, Or., for appellant.

Wood, Matthiessen & Rankin and Arthur P. Ireland, all of Portland, Or., for appellee.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

Ross Island Sand & Gravel Company filed a petition for reorganization under 77B of the Bankruptcy Act (11 U.S.C.A. § 207), wherein it claimed assets amounting to $2,880,022.17, and liabilities for the same amount, including $2,031,671.46 of liabilities to preferred and common stockholders. The principal liabilities, other than the capital liabilities, consisted of current indebtedness, amounting to $262,260.28, and a bonded debt of $488,100 secured by a trust deed. For convenience, the properties covered by the trust deed are divided into five parcels. Parcels 1, 2, and 3 consist of four hundred acres of land in and near the city of Portland, Or., valuable for its sand and gravel content. Parcel 4 consists of the buildings, tools, etc., used in and upon said land in the conduct of the business of the petitioner in producing and selling its sand and gravel. Parcel 5 consists of certain shares of stock in the Beaver Portland Cement Company which owned and operated a cement plant near Gold Hill, Or., and the entire capital stock of the Oregon Gravel Company which owns and conducts a sand and gravel business near Salem, Or. The stock of the Beaver Portland Cement Company above mentioned was sold, during progress of the proceeding, for $175,000 cash, with an agreement on the part of the debtor to pay from its unmortgaged estate

certain fees in the proceeding amounting to about $15,000. The purchase price was paid to the trustee in the proceeding to be held and disposed of in lieu of the property sold. A plan of reorganization was proposed by which the proceeds of the sale of Beaver Portland Cement Company stock were to be distributed pro rata to the bondholders and the balance of the properties consisting of parcels 1, 2, 3, and 4, and the stock of the Oregon Gravel Company were to be turned over to the debtor, Ross Island Sand & Gravel Company. This plan was approved by 75½ per cent. of the bondholders, 100 per cent. by the unsecured creditors, 72.85 per cent. of the preferred stockholders, and 80.24 per cent. of the common stockholders. Appellant, one of the bondholders, holding bonds of $2,000 par value out of $488,100 bonds secured by the trust deed, objected to the proposed plan of reorganization but his objections were overruled, and the court made an order approving the proposed plan which gave to the debtor the four parcels of property and the stock of the Oregon Gravel Company free and clear of all claims on the part of the holders of the above-described bonds but subject to a lien for taxes amounting to $76,835.15. This appeal is taken by the bondholders from the order approving the plan of reorganization.

Appellant claims that the order violates his constitutional rights, and also violates the provisions of 77B of the Bankruptcy Act in that the plan is unfair and inequitable.

The appellee concedes that if there is nothing more to the case than we have stated there would be little merit in the plan of reorganization. Appellee, however, claims that there are other factors which call for a different conclusion. Stated in the brief, these facts are that the officers of the debtor corporation acted with the bondholders' committee in an effort to secure a purchaser for some of the assets of the corporation, and this effort resulted in securing a purchaser for the stock of the Beaver Portland Cement Company for $175,000 net; that because of the extraordinary efforts put forth by the officers of the corporation and the members of the bondholders' committee, who co-operated with said officers, cash amounting to nearly four times what might reasonably have been expected for the entire property of the corporation had been thus received. It further appears from the record that in an agreement of April 9, 1936 between the bondholders' committee, the debtor, and the trustee named in the trust deed, it was provided that the debtor should file a reorganization plan providing that the $175,000 to be received for the sale of the stock of the Beaver Portland Cement Company should be paid and distributed to the bondholders of the debtor after deducting certain expenses for the trustee, the committee, and their attorneys and agents; and that "all mortgaged assets, other than said Beaver Portland Cement Company stock, shall be released from the lien of said bond issue and be owned by Ross Island Sand and Gravel Company free and clear and in full satisfaction of the claims of bondholders thereof." In the agreement it was also provided that "the Debtor and Committee hereby agree to support and at all times to vote for the plan described * * *, and the Trustee agrees not to object to said plan." The agreement further provided, however, that "the agreement in this paragraph (4) [that the debtor and Committee would agree to vote for the plan and the trustee would not object to it] contained, on the part of the Committee and Trustee, is made not by way of waiver of claim to any mortgaged assets, but by reason of the settled conviction of the trustee and Committee, after due consideration, that said plan constitutes the best and most feasible method of procuring the highest amount possible from all of the mortgaged assets." It is conceded by appellee that the bondholders' committee had no power to guarantee that the remaining assets would be turned back to the debtor. The question before us is whether or not the dissenting bondholder, whose interest in the lien upon the other property of the debtor has been surrendered to the debtor by the approved plan of reorganization without any consideration moving to him other than his pro rata interest in the cash received for the sale of the stock of the Beaver Portland Cement Company, is bound thereby.

The Supreme Court in Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, held that the bankruptcy power is subject to the Fifth Amendment and that under the bankruptcy power, Congress cannot authorize the bankruptcy court to take for the benefit of the debtor rights in specific property acquired by the creditor. In Security-First National Bank of Los Angeles v. Rindge Land & Navigation Company, 85 F.(2d) 557, 561, we said: "There is nothing in section 77B which authorizes a debt-

or to pay a secured creditor less than half the amount of the debt while retaining to its own use a portion of the property securing the debt. The right to retain a lien until the debt secured thereby is paid is a substantive property right which may not be taken from the creditor consistently with the Fifth and Fourteenth Amendments to the Constitution. Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 594, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106."

■ It is clear that as to appellant, the order approving the proposed plan of reorganization which gave the debtor the property securing the trust deed (aside from the stock of the Beaver Portland Cement Company) is erroneous and that appellant has a right to retain the lien of the trust deed as against this property. We need not inquire whether there can be circumstances under which the consent of two-thirds of the bondholders would be binding upon the other third. The statute so provides. See a decision by the Circuit Court of Appeals for the Seventh Circuit, In re 333 North Michigan Ave. Bldg. Corp., 84 F.(2d) 936.

■ Appellee contends that the retention by it of assets covered by the trust deed under the Revised Proposed Plan of Reorganization was proper as an award to it of a commission earned by it for procuring a purchaser of the stock of the Beaver Portland Cement Company. Such a commission appellee contends is authorized by section 77B (c) (9), Bankruptcy Act (11 U.S.C.A. § 207 (c) (9).

The District Court in its order approving the "Debtor's Revised Proposed Plan of Reorganization" ordered that "the assets of the Ross Island Sand and Gravel Company * * * other than the * * * stock of the Beaver Portland Cement Company * * * be retained by the Ross Island Sand and Gravel Company as and for commission due, earned and so paid, because of the procurement of a purchaser for said stock of Beaver Portland Cement Company at the purchase price of $175,000." Section 77B (c) (7), Bankruptcy Act (11 U.S.C.A. § 207 (c) (7), provides that the judge after the approval of an initial petition "shall cause reasonable notice * * * of all hearings for the consideration of any proposed plan, * * * or the allowance of fees or expenses, to be given creditors and stockholders by publication or otherwise." There was no notice given that the assets of the debtor, aside from the stock of the Beaver Portland Cement Company were claimed as commission earned for services rendered in procuring a purchaser for said stock. The notice which Roscoe C. Nelson of the Bondholders' Committee testified he sent the bondholders regarding the proposed sale of the stock of the Beaver Portland Cement Company did not purport to be such a notice. In the debtor's Revised Proposed Plan of Reorganization, it was not provided that these assets were to be given the debtor as commission for services rendered but instead that the remaining assets of the debtor free and clear of the bond obligations should be subject to the claims of the remaining creditors and of the stockholders of the debtor to be represented by a new issue of stock. Nor did anything in the agreement of April 9, 1936, give notice of such a proposal.

We conclude that the order of the trial court approving the debtor's Revised Proposed Plan of Reorganization which allowed the debtor to retain assets covered by the deed of trust cannot be upheld on the ground that such assets were properly awarded the debtor as commission earned.

■ The plan of reorganization is to pay the bondholders only 40 per cent. of their obligations, such payment being derived from only a portion of the property upon which the bondholders have a lien, and to release other property subject to the lien to the debtor and its general creditors. The plan cannot stand against the objecting bondholder.

That the interest of the appellant bondholder is small as compared with the interest of all the other bondholders and stockholders does not alter the fact that the appellant has been deprived of property to which he was justly entitled. This cannot be done. It is clear that to overthrow the entire reorganization plan would deprive the debtor of the advantage to which it is entitled by reason of the actual consent of 75½ per cent. of the bondholders, and of its general creditors. There is no reason why the bondholders who have expressly agreed to the proposed plan should not be bound thereby and in default of objection by any of the other bondholders there seems to be no reason why they should not also be bound by the order to which they have, in legal effect, concurred.

The order of the trial judge should be modified in such a way as to protect the appellant in his rightful claim to the lien upon parcels 1, 2, 3, and 4 and the stock of the

Oregon Gravel Company. As he owned bonds amounting to $2,000 out of a bond issue of $488,100, he is entitled to $\frac{20}{4881}$ of the lien of the trust deed upon the property in question. This lien is subject to the prior tax lien for $76,835.15. The appellee claims that the property covered by the trust deed other than the stock sold is not an asset but a liability. The appellant seems to claim that the property is worth between $40,000 and $45,000. The balance sheet of the debtor of February 29, 1936, accompanying the proposed plan of reorganization, gives a value to the Oregon Gravel Company stock of $55,369.05; to the "Plant property" $261,-944.26; to the buildings, machinery, and equipment $209,823.38; a total of over half a million dollars. If the property is worthless, of course the appellant's lien thereon is also valueless. If the value of the property over and above the tax lien is $45,000, appellant's pro rata interest would be about $182.25, subject to his pro rata contribution to the expenses of administration. As was said in Texas Hotel Securities Corp. v. Waco Development Co., 87 F.(2d) 395, Circuit Court of Appeals, Fifth Circuit, decided December 28, 1936, the "realization of the value of a claim or interest may be adequately secured by sale or appraisal of the thing which gives it value with the proportionate part of the value paid." We are unable to ascertain from the record the fair market value of this property. No effort was made to establish it in the trial court. The order of the trial court approving the plan of reorganization is modified as follows:

The court will ascertain the fair market value of parcels 1, 2, 3, and 4 and of the stock of the Oregon Gravel Company subject to liens prior to that of the trust deed, including such expenses of administration as may have been incurred and are properly chargeable to the bondholders, without regard to the settlement of such expenses contained in the reorganization plan. Such expenses shall include any allowance for commissions, attorneys' fees, trustee's fees and costs properly chargeable to the bondholders. The court shall decree that the said property shall be subject to a lien in favor of the appellant of $\frac{20}{4881}$ of the value of this equity, to be paid at such time as may be agreed upon. In making this order we are under the impression that the value of this property is so comparatively small, and the interest of the appellant therein so insignificant in consequence, that the parties interested in the property will probably arrange for the payment to the appellant of this interest in cash. Otherwise, the trial court shall fix the time and method of enforcing the appellant's lien.

Order affirmed as modified; appellant to have his costs on appeal.

DENMAN, Circuit Judge (dissenting).

The decision of the court is a commonsense and practical solution of this particular problem. In usual lay parlance it is an "equitable" solution. If the doctrine of de minimis were applicable I would concur, but here we are sitting as a court of equity dealing with legal rights. The decision substitutes a new contract for that of the bondholder though neither party has pleaded for reformation and the bondholder is not seeking a new contract giving him a lien essentially different from that of the trust indenture securing his bond.

If we have the power, whether discretionary or obligatory, to create a new contract between the debtor and a bondholder holding a very small percentage of the bonds, we would have such power if 24 per cent. of the bondholders were dissentient.

I do not believe Congress intended to or could confer on a court of equity the power to take from any bondholder the rights created by the securing trust indenture—say, that right at the sale to bid the bonds to their face value or the right to have provided insurance on the mortgaged properties or the right to interest and interest penalties, or the right to have the trustee take the burden of foreclosure proceedings, providing counsel and performing other administrative acts which practically all the bondholding public expect will be performed by the trustee. A Californian buying bonds of an automotive concern of Michigan knows his security may have to be foreclosed by his trustee, but he does not contemplate he is buying a personal lawsuit in which he is to be a plaintiff on a strange new contract created by the court for the fraction which his bonds bear to the whole issue. I do not believe he does and hence dissent.