**In re LOS ANGELES LUMBER PRODUCTS CO., Limited.**

**CASE et al. v. LOS ANGELES LUMBER PRODUCTS CO., Limited.**

**Nos. 8841, 8951.**

Circuit Court of Appeals, Ninth Circuit.

Jan. 12, 1939.

Rehearing Denied Feb. 9, 1939.

Thomas K. Case, Clarke & Bowker, and Robert M. Clarke, all of Los Angeles, Cal., for appellants.

Faries & McDowell and David R. Faries, all of Los Angeles, Cal. (J. Clifford Argue, of Los Angeles, Cal., of counsel), and Gibson, Dunn & Crutcher, J. C. Macfarland, and Stuart L. Lapp, all of Los Angeles, Cal. (Frederic H. Sturdy, of Los Angeles, Cal., of counsel), for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Two appeals are here involved, one from an interlocutory order and the other from a final order confirming a plan of reorganization in a proceeding under § 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The appellants are minority bondholders.

The record contains a statement of evidence and proceedings on the hearing of the proposed plan, but concededly it is partial and incomplete. Accordingly, the appeal must be considered as one taken on the judgment roll alone. In the absence of the complete record appellants have stipulated that "they intend to raise questions of substantive law only; that they will not attack the findings of the trial court on the ground that they are unsupported by evidence * * *."

The debtor is a holding corporation owning all the capital stock, except directors' qualifying shares, of six subsidiary

corporations. Three of the subsidiaries are without assets. Two have assets of little value, and under the plan these are to be sold and dissolution of the five subsidiaries effected.

The remaining subsidiary, Los Angeles Shipbuilding and Drydock Company, has substantial assets. This corporation builds and repairs merchant vessels and small naval craft in its yards located on sixty-eight acres of leased tide land at Los Angeles Harbor. At present its activities are confined largely to the repair of vessels, although during the world war it had carried on an extensive program of ship construction. During its busiest years it employed large numbers of men and did a gross volume of business running into the millions. After the demand for new bottoms declined its activities materially decreased.

In 1924 the debtor issued certain collateral trust bonds to mature in twenty years, the issue being secured by the hypothecation of all the capital stock of the debtor's subsidiaries and by a trust deed lien on all their fixed assets. There are presently outstanding of this bond issue $2,565,500 face value, interest upon which has been delinquent since February 1, 1929.

Other than the lien of these bonds, the subsidiary Shipbuilding Company has only current debts of small amount which under the reorganization plan will be paid in the ordinary course of business. Its fixed assets were found to have a value of $430,000 and it has current assets, including cash, inventory and accounts receivable, not subject to the lien of the bonds, of the value of $400,000. The total value of all the assets of this subsidiary is $830,000. The leasehold on which the plant is situated was found to have no realizable value for creditors in the event of liquidation.

The debtor has outstanding capital stock consisting of 57,065.65 shares of Class A and 5,112 shares of Class B stock of no par value. In 1930 certain of the debtor's stockholders contributed $400,000 to its capital, this new money being apparently turned over to the subsidiary Shipbuilding Company for use as working capital. Coincident therewith the trust indenture securing the bonds was amended with the consent of those holding 97% of these obligations. The amendment effected a reduction in the interest rate of the bonds and further provided that the interest was thereafter to be paid only out of earnings. The effect of this modification of the indenture was that the lien cannot be foreclosed until the maturity of the bonds in 1944. The court found that the amendment was binding on all bondholders regardless of their consent.

In January, 1938 the debtor petitioned for reorganization under § 77B and proposed a plan which the court, with some modifications, approved. The approved plan involves the organization of a new corporation to which is to be transferred all the assets of the subsidiary Shipbuilding Company, free and clear of liens. The capital stock of the new corporation will consist of 1,000,000 shares of the par value of one dollar each, divided into Class A and Class B stock, all shares having equal voting rights. The Class A stock is preferred upon liquidation to the amount of its par value, and has preference to the extent of the payment of a 5% annual dividend, if earned. Dividends are not cumulative.

The bondholders are to receive 641,375 shares of the Class A stock, to be divided pro rata among them on the basis of 250 shares for each $1,000 bond. The balance of the Class A stock, amounting to 170,000 shares, is to be sold to furnish additional working capital. The common or Class B stock, amounting to 188,625 shares, is to be issued to the holders of the present Class A stock of the debtor corporation. The holders of the common shares are entitled to receive in any fiscal year, after a dividend of 5% for such year has been paid on the preferred shares, dividends at the rate of 5% on the par value of such common shares, when and as declared out of any funds available for the declaration of dividends. Any further dividends paid during any such year are to be distributed pro rata among the preferred and common shareholders. On liquidation or dissolution, after the holders of the preferred stock have been paid full par value, the holders of the common shares are entitled to receive the par value thereof; and any other funds or property available for distribution are to be distributed ratably among all stockholders.

A representative of the bondholders is to be named as a director of the new corporation, which will have seven directors, the remaining membership of the board to con-

sist of members of the debtor's present board. An election of directors for the new corporation under the reorganized set-up is to be held within ninety days, under the supervision of the court, and the debtor corporation and its officers and directors are to remain neutral in such election.

This plan was accepted by the holders of 89% of the principal amount of the debtor's bonds, by the holders of 98% of its outstanding Class A stock, and by the holders of 89% of its outstanding Class B shares. No others are affected by the plan. The appellants, who hold $18,500 principal of the bonds, refused to accept the proposal.

As we understand the matter, appellants here make substantially the following contentions—(a) that as to them the plan is neither fair, equitable nor feasible and is discriminatory; (b) that the trial court erred in allowing the present stockholders of the insolvent debtor to participate in the reorganization; (c) that the plan is not fair to appellants because no provision is made for their "adequate protection" as contemplated by subdivision (b) (5) of § 77B, 11 U.S.C.A. § 207(b) (5); and (d) that as minority bondholders they are not bound by the acceptance of the plan by two-thirds in amount of the class of creditors to which they belong, and cannot without their consent be deprived of their mortgage lien.

(a) The court found that—in the present state of insolvency of the debtor and its subsidiary—bonding companies are unwilling to become surety for construction contracts, and the opportunity to bid on important construction is thus foreclosed. Also, that the Government is planning the construction of warships and auxiliary vessels and that the shipyard of the subsidiary company is equipped for the building of vessels of the proposed type. Important opportunities are thus said to be open to the debtor and its subsidiary which will be lost to stockholders and creditors alike unless reorganization can be effected. It is further found that in the present posture of affairs the bonds cannot be foreclosed until their maturity in 1944, and that even if foreclosure were now possible the bondholders would receive on liquidation substantially less than the present appraised value of the debtor's assets.

There are express findings to the effect that the plan is fair and equitable, that it does not discriminate unfairly in favor of any class of creditors or stockholders, and that it is feasible. In the state of the record and in the light of the stipulation heretofore quoted, it is not possible for this court to do other than accept these findings.

(b) In respect of the participation of the present stockholders in the proposed reorganization, the findings and stipulation again foreclose inquiry here. It was found that the value to the bondholders of maintaining the debtor as a going concern, and of avoiding litigation, is in excess of the value of the stock being issued to the present shareholders; that valuable consideration is given for such participation in the virtual abrogation of the 1930 amendment deferring foreclosure until 1944; that the continued participation of the present shareholders in the new corporation will be an asset of value to it because of the familiarity of these stockholders with the business of the subsidiary and because of their financial standing and influence in the community; and finally that the plan was offered and accepted in good faith.

We must assume there was adequate evidence to support these findings. The reorganization places the bondholders in the situation where they may exercise control. As matters now stand the present stockholders would retain control for years to come. Meanwhile stagnation in the business and deterioration of the physical plant would inevitably continue. It cannot be said as a matter of law that the extent to which the shareholders are permitted to participate is too great or that a compromise of their rights is not of substantial value to those holding the bonds. We are in no position to appraise imponderable factors seemingly of influence with the court below.

(c) Appellants complain that they are not given the "adequate protection" afforded by subdivision (b) (5) of the statute. The provisions of this subdivision are quoted on the margin.[1] Obviously they have no

---

[1] "(b) A plan of reorganization within the meaning of this section (1) shall include provisions modifying or altering the rights of creditors generally, or of any class of them, secured or unsecured, either through the issuance of new securities of

relevancy, since they are applicable only where less than two-thirds in amount of a given class have accepted the plan. Here more than two-thirds in amount have approved it.

■ (d) The statute clearly empowers the court to approve a proposal altering the rights of secured creditors "either through the issuance of new securities of any character or otherwise." A plan substituting preferred stock for secured bonds is within the purview of the act. 11 U.S.C.A. § 207 (b) (1), (9), (10).[2] If the proposal is found to be fair and feasible and not discriminatory in favor of any class, the consent of two-thirds of a class is binding on the minority, notwithstanding their rights are materially altered.[3] See In Re 333 North Michigan Avenue Bldg. Corp., 7 Cir., 84 F.2d 936. While their argument points in that direction, appellants disclaim any purpose of assailing the constitutionality of these provisions of the statute.

Affirmed.

any character or otherwise; * * * (5) shall provide in respect of each class of creditors of which less than two thirds in amount shall accept such plan (unless the claims of such class of creditors will not be affected by the plan, or the plan makes provision for the payment of their claims in cash in full), provide adequate protection for the realization by them of the value of their interests, claims, or liens, if the property affected by such interests, claims, or liens is dealt with by the plan, either as provided in the plan (a) by the transfer or sale of such property subject to such interests, claims, or liens, or by the retention of such property by the debtor subject to such interests, claims, or liens, or (b) by a sale free of such interests, claims, or liens at not less than a fair upset price and the transfer of such interests, claims, or liens to the proceeds of such sale; or (c) by appraisal and payment either in cash of the value either of such interests, claims, or liens, or, at the objecting creditors' election, of the securities allotted to such interests, claims, or liens under the plan, if any shall be so allotted; or (d) by such method as will in the opinion of the judge, under and consistent with the circumstances of the particular case, equitably and fairly provide such protection."

[2] The recent revision of the bankruptcy laws, as effected by the Chandler Act (Act of June 22, 1938), retains in clarified form the relevant provisions of the present law. Subchapter X, Chapter 10, 11 U.S.C.A. § 616; also subchapters VII and XI, 11 U.S.C.A. § 556 et seq., ibid. § 621 et seq. (1938 Cumulative Supplement).

[3] So far as material, subdivision (e) of the statute, 11 U.S.C.A. § 207(e), provides: "(1) A plan of reorganization shall not be confirmed until it has been accepted in writing, whether before or after the filing of the petition or answer under this section, and such acceptance shall have been filed in the proceeding by or on behalf of creditors holding two thirds in amount of the claims of each class whose claims have been allowed and would be affected by the plan and by or on behalf of stockholders of the debtor holding a majority of the stock of each class: Provided, however, That such acceptance shall not be requisite to the confirmation of the plan by any creditor or class of creditors (a) whose claims are not affected by the plan, or (b) if the plan makes provision for the payment of their claims in cash in full, or (c) if provision is made in the plan for the protection of the interests, claims, or liens of such creditor or class of creditors in the manner provided in subdivision (b), clause (5), of this section * * *."