**EQUITABLE RESERVE ASS'N et al. v. DARDANELLE SPECIAL SCHOOL DIST. NO. 15 OF YELL COUNTY, ARK.**

No. 12597.

Circuit Court of Appeals, Eighth Circuit.

Oct. 25, 1943.

L. P. Biggs, S. L. White, and John S. Gatewood, all of Little Rock, Ark., for appellants.

Wallace Townsend and Lee Cazort, Jr., both of Little Rock, Ark., for appellee.

Before WOODROUGH, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

On November 23, 1942, the Dardanelle Special School District No. 15 of Yell County, Arkansas, filed its petition for composition with its creditors pursuant to the provisions of §§ 81–84 of the Bankruptcy Act, 50 Stat. 654, as amended June 28, 1940, c. 438, §§ 1–4, 54 Stat. 670, June 22, 1942, c. 434, 56 Stat. 377, 11 U.S.C.A. §§ 401–404. On February 19, 1943, the district court, after notice and hearing, filed findings of fact and conclusions of law, and entered an interlocutory decree confirming a plan for the composition of the debts of the school district. The Equitable Reserve Association and American United Life Insurance Company, creditors, having objected to the confirmation of the plan, have appealed.

The plan contemplated the composition and liquidation of the bonded indebtedness of the district. The outstanding bonds included in the plan consisted of $1,000 of an issue dated October 1, 1917, bearing 6% interest; $53,000 of an issue dated March 1, 1926, at 5%, due October 1, 1932, and $102,000 of an issue dated January 1, 1931, at 5½%, and maturing July 1, 1932, through July 1, 1942. Interest on all of the bonds was in default.

The assessed valuation of lands in the district in 1930 was $1,276,645. Because of adverse conditions prevailing in the district since then, the assessed value of all the property in the district has dropped in 1943 to $821,318.

Article 14, § 3, of the Constitution of Arkansas, as amended in 1917, see Acts 1917, p. 2304, limited the power of a school district to levy a tax to "twelve mills on the dollar in any one year for school purposes." Amendment No. 11, adopted in 1926, authorized such districts to levy a tax "not to exceed eighteen mills on the dollar in any one year for the maintenance of schools, the erection and equipment of school buildings and the retirement of existing indebtedness for buildings." Both amendments provided "that no such tax shall be appropriated for any other purpose nor to any other district than that for which it was levied."

These constitutional limitations on the taxing power and the depreciation in the assessed value of property in the district made it impossible for the district to operate its schools and pay interest on its bonded indebtedness.

In 1935 suit was brought in the federal court against the district upon the bonds, and a decree was entered in June, 1938, in favor of the bondholders awarding judgments aggregating more than $166,000 with interest at 6%. The decree, as amended, directed the district to set aside in a separate fund the equivalent of six mills of its annual tax revenues for the liquidation of the judgment. The fund so provided has not been adequate to pay the interest; and the remainder of the revenues has not been sufficient to operate the schools for eight months in the year without charging tuition.

Under the decisions of the Supreme Court of Arkansas, construing the Arkansas statutes, an urban special school district is without power, in the absence of a special election, to secure bonds by a lien upon its revenues. See Morton v. Dardanelle Special School District No. 15, 8 Cir., 121 F.2d 423.

A statute of Arkansas, Pope's Dig. § 11546 et seq., authorizes a school district to borrow from a revolving loan fund, administered by the State Board of Education, up to 10% of the assessed valuation of the taxable property for payment of its bonded indebtedness, provided such indebtedness after settlement with creditors does not exceed 10% of such valuation, and provided such indebtedness can be bought at the same discount. The state board has approved such a loan in this case; and the court has found that the amount thereof is equivalent to $523 per $1,000 of bonded indebtedness of the district.

The plan proposed by the district provides for the use of the loan from the state and of certain other funds available to pay an amount equal to approximately 60% of the face amount of the bonded indebtedness.

The owners of $1,000 of the 1917 issue of bonds, $4,000 of the 1926 issue and

$2,000 of the 1931 issue have not filed claims in this proceeding. Claims in the amount of $149,000 have been filed. Of those filing claims the following owners have consented in writing to accept the plan of composition:

| | |
|---|---|
| T. J. Raney & Sons | $121,000 |
| Fred A. Smith | 3,000 |
| Total | $124,000 |

The following owners have not consented to accept the plan:

| | |
|---|---|
| American United Life Ins. Co. | $13,000 |
| Equitable Reserve Association | 10,000 |
| J. F. O'Melia | 1,000 |
| Citizens Bank and Trust Co. | 1,000 |
| Total | $25,000 |

O'Melia and the Citizens Bank and Trust Co. have not appealed.

The dissenting creditors seek reversal of the interlocutory decree confirming the plan of composition on the grounds—

1. That the Act of August 16, 1937, as amended, entitled "Composition of Indebtedness of Local Taxing Agencies", is unconstitutional and void;

2. That the plan of composition was not consented to by creditors holding the requisite amount of indebtedness against the debtor district;

3. That the plan of composition is unfair, inequitable and discriminatory; and

4. That the petition was not filed in good faith.

The contention that the Act of Congress invoked by the school district in this proceeding is unconstitutional is based upon the assertion that it deprives the appellants of vested substantive rights in specific property contrary to the Fifth Amendment to the Constitution. These specific rights derive, they assert, from a provision in the deeds of trust securing the bonds and giving the bondholders a lien upon the school houses owned by the district, and from the judgment rendered by the district court in 1938 in favor of the bondholders. To support this contention appellants rely upon Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, and Ashton v. Cameron County Water Imp. Dist. No. 1, 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309.

The question thus presented was neither raised in nor passed upon by the district court. Further, neither the deeds of trust nor the decree referred to is set out in the record. There is, therefore, no basis in the record to support this contention. It may be observed on this point, however, that subsequent to the decision of the Ashton case, supra, the Act was amended and was thereafter held to be valid by the Supreme Court in United States v. Bekins, 304 U.S. 27, 58 S.Ct. 811, 82 L.Ed. 1137. Moreover, whatever rights appellants have in specific property such rights are the same as the rights of all the bondholders. The trust deeds and the decree of the district court in 1938 are for the benefit of all the bondholders. The composition proposed in the plan confirmed is for the purpose of adjusting all the rights of all the creditors in the same property; and, as this court observed in the case of Luehrmann v. Drainage District No. 7 of Poinsett County, 8 Cir., 104 F.2d 696, 702, composition under such circumstances does not deprive a person of his property without due process of law in violation of the Fifth Amendment.

The second contention of appellants, namely, that the plan of composition was not consented to by creditors holding the requisite amount of indebtedness against the debtor district, is not supported by the evidence.

Section 403(d) of the statute provides that: "The plan of composition shall not be confirmed until it has been accepted in writing, by or on behalf of creditors holding at least two-thirds of the aggregate amount of claims of all classes affected by such plan and which have been admitted by the petitioner or allowed by the judge, but excluding claims owned, held, or controlled by the petitioner."

The court found that 79% of such creditors had accepted the plan. The objection to the finding is that the court erred in its calculation, because the holding of T. J. Raney & Sons was included at the face or par value of the bonds owned by that firm, to-wit, $121,000, instead of at cost. T. J. Raney & Sons purchased their bonds over a period of years at a total cost of $61,908.98, and it is asserted that their vote for acceptance of the plan should have been limited to that amount. Appellants rely upon American United Mutual Life Insurance Co. v. City of Avon

Park, 311 U.S. 138, 146, 61 S.Ct. 157, 85 L.Ed. 91, 136 A.L.R. 860. The decision of the Supreme Court does not support this contention. However, if the trial court did err in its calculation such error is without prejudice, for the reason that including all bonds at cost to the owners the necessary two-thirds were owned by consenting creditors, as shown by the following computation:

Consenting owners.

| | |
|---|---:|
| T. J. Raney & Sons, cost of bonds | $61,908.98 |
| Fred A. Smith, cost of bonds.... | 3,000.00 |
| | $64,908.98 |
| Nonconsenting owners........ | 25,000.00 |
| Total | $89,908.98 |

Clearly the amount owned by the consenting creditors exceeds two-thirds of the total. But appellants contend that in arriving at the result the total face value of the claims against the district, $149,000, should be used. We do not think that the facts of this case warrant any such change of base. The requirements of equity are achieved by consistency.

The third objection to the plan of composition is that it is unfair, inequitable and discriminatory.

Section 403(e) of the statute provides that at the conclusion of the hearing the judge shall confirm the plan "if satisfied that (1) it is fair, equitable, and for the best interests of the creditors and does not discriminate unfairly in favor of any creditor or class of creditors."

The gist of appellants' complaint that the plan is inequitable and discriminatory is that under it T. J. Raney & Sons will receive a larger percentage of the cost to them of their bonds than would appellants receive of the cost of their bonds. If this objection is tenable it renders impossible every opportunity of the district to effect a composition under the statute. Section 403(b) requires the court to "classify the creditors according to the nature of their respective claims and interests: Provided, however, That the holders of all claims, * * * which are payable without preference out of funds derived from the same source or sources shall be of one class." In this instance all the bonds are payable from the same source, the revenues of the district. They were properly classified, therefore, as all being of the same class.

All the bonds issued by the district are obligations to pay their face value and from the same source without preference. And, unless the district settles with the bondholders on this basis, it cannot obtain the approval of the State Board of Education for an advancement from the revolving fund created by the state; and without such assistance no substantial payment is possible.

Appellants propose an escape from this dilemma. They say they are willing to accept refunding bonds at a lower rate of interest, and that a refunding operation is the only fair way to solve the district's financial trouble. The evidence shows that refunding is neither reasonable nor feasible. Within the tax limitations imposed upon the district by the state constitution it would require approximately 100 years to pay all the bonds and to operate the schools, even if the schools were operated on exceptionally low standards.

Further, it cannot be said that a plan is inequitable or discriminatory which offers to all honest bondholders of the same class an equal percentage of their claims. Those who paid more than the bonds were worth should not be rewarded for their bad judgment and those who purchased at fair values be penalized for their thrift. It is not claimed that T. J. Raney & Sons were responsible for the fluctuation in the price of the bonds; that they induced appellants to pay the par value of the bonds; or that they obtained their bonds at a lower price by unfair means. Neither the statute nor principles of equity support appellants' contention. Both parties here are only purchasers of bonds for profit and both equity and the statute require that they be placed in the same class.

Finally, it is contended that the court erred in finding and holding "that the offer of the plan and its acceptance are in good faith." This contention does not require extended discussion. Appellants' position is not supported by evidence. Because T. J. Raney & Sons purchased a large part of their bonds a comparatively long time after they had been issued and a comparatively short time before the petition was filed, appellants say it must be assumed that there was connivance between them and the petitioner. The same accusation was made in the answer and at the hearing, but the evidence does not support such an inference. Raney

bought the bonds supposing there would be a refunding operation and that he would be able to sell them at a profit. He did not know any more about the financial condition of the district than did the men from whom he purchased the bonds. Neither did he know that the district would seek composition with its creditors. The officers of the district in no way influenced Raney to purchase its bonds by promises, suggestions or otherwise. Nothing in the record reflects upon the good faith of all parties to the proceeding. The finding of the court cannot be set aside on the suspicion of the appellants only.

The plan appears in every way to be fair and equitable. The findings of the court are supported by practically undisputed evidence. The district is insolvent, and it is difficult to conceive a plan that would be more advantageous to the creditors. The statute has been followed strictly, and apparently in good faith. The interlocutory decree confirming the plan is therefore affirmed.